***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The parties stipulate and agree to the following undisputed facts:
A. On April 14, 1990, decedent sustained a compensable back injury;
B. On August 17, 2001, Deputy Commissioner George R. Hall, III entered an Order regarding care, treatment, and vocational rehabilitation services for deceased/decedent;
C. On March 1, 2002, defendant filed a Motion to Terminate or Suspend Payment of Compensation for deceased/decedent;
D. An Order dated May 1, 2002, Deputy Commissioner George R. Hall, III issued an Order denying Defendant's Motion, but ordered decedent to comply with all medical treatment and vocational rehabilitation efforts;
E. Since the May 1, 2002 Order of the Commission, decedent has had medical evaluations done by Leslie R. Phillips, Psychologist, Dr. John Giusto, Physiatrist, and Dr. Robert Rollins, Psychiatrist;
F. Decedent continued to see Dr. Barbara Sheline, her primary care physician in the Duke network. Decedent had been under Dr. Sheline's care and treatment since the time of her injury;
G. Decedent requested that defendant pay her primary care medical bills and prescriptions prescribed by her primary care physician through Workers' Compensation;
H. Defendant denied said payments saying they are not compensable;
I. Decedent petitioned defendant to provide her with a gym membership in order to condition and strengthen her back muscles. Defendant denied this request;
J. Decedent petitioned that defendant provide her with psychiatric treatment through Workers' Compensation, which has been denied.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Decedent was 57 years old at the time of the hearing before the Deputy Commissioner and was a Registered Nurse with a Master's Degree in Public Administration. In April 1990, decedent sustained a compensable injury to her back that exacerbated a pre-existing back condition, which subsequently resolved resulting in a 4% permanent partial impairment rating to her back from Dr. Michael Gwinn and Dr. Linda Frazier and a 15% permanent partial impairment rating to her back from Dr. Lestini.
2. Due to the exacerbation of her pre-existing back condition, decedent could not return to her pre-injury nursing position, but did return to a research position with defendant that ended due to a lack of funding. Issues regarding decedent's entitlement to temporary total disability compensation arose and were resolved through litigation in which decedent prevailed. At the time of the hearing before the Deputy Commissioner, decedent was out of work and receiving temporary total disability compensation.
3. Several physicians, first under the direction of Dr. Linda Frazier of Duke University Employee Occupational Health and Wellness (EOHW), lately under the direction of Dr. George Jackson also of EOHW, have treated decedent for her April 1990 injury. Dr. Jackson testified that "Ms. Wade has received extensive treatment and at this point I do not believe that with regard to the injury of 1990 she needs further treatment."
4. All of decedent's authorized treating physicians are of the opinion that she had reached maximum medical improvement from her April 1990 compensable injury and is capable of doing sedentary work.
5. Based on the physician's opinions, defendant assigned a Vocational Rehabilitation professional to assist decedent with return to work efforts. The Rehabilitation Professional was frustrated in his efforts and, as a result, defendant moved the Commission to compel deceased/decedent's compliance with rehabilitative efforts. Defendant's Motion was granted in an Order issued by Deputy Commissioner Pamela T. Young on May 11, 2001.
6. Decedent then filed a Motion requesting a change of treating physician and the removal of the assigned medical rehabilitation professional. The parties appeared before Deputy Commissioner George R. Hall, III on August 9, 2001 and without a formal hearing, defendant agreed to a change in physician to another physician of defendant's choosing while decedent agreed to cooperate with vocational rehabilitation efforts. The agreement was memorialized in an Order filed August 17, 2001.
7. Pursuant to the agreement, defendant assigned Ted Sawyer, Vocational Rehabilitation Professional to assist decedent with vocational rehabilitation efforts. After decedent failed to keep three appointments she scheduled with Mr. Sawyer to discuss the assignment, defendant filed a Form 24 Application to Terminate or Suspend Payment of Compensation with the Commission.
8. Subsequent to filing the Form 24 Application, Ms. Ashley Harrelson, was assigned to assist decedent with job seeking efforts. Decedent refused to fully cooperate with Ms. Harrelson in that she refused to follow through on agreed upon assignments, including signing the Industrial Commission Form 25C, providing job seeking activity logs and completing job applications as directed.
9. Decedent had reached maximum medical improvement from her April 1990 compensable injury and required no further medical treatment.
10. Decedent's recent back problems for which her personal health care physician, Dr. Barbara Sheline, treated her were multi-factorial and not related to her April 1990 injury.
11. Dr. Phillips, psychologist, testified that decedent had depressive symptoms, but it was unclear the extent to which those related to the actual injury since there was a preexisting history of depression and decedent was already on antidepressant medications at the time of her work-related injury. Dr. Phillips also testified that she had seen decedent for an assessment regarding her admission into the TRIPP program and Dr. Phillips "did not see her as a candidate for comprehensive treatment at this time due in part to her unwillingness to withdraw from opioid analgesics, also in combination with the fact that she presented with a pretty high level of physical functioning and that she had in fact completed two previous comprehensive pain rehabilitation treatment programs."
12. Dr. Rollins, in his psychiatric evaluation report of September 8, 2002, opines that, "as a result of childhood experiences, Mrs. Wade has difficulty with relationships. She perceives that others ask too much and exert control. Mrs. Wade denies depression or mental health treatment prior to the work injury of April 14, 1990. Dr. Frazier reports depression and mental health treatment prior to April 14, 1990. Records of treatment were not available." Dr. Rollins report went on to say that, "current medications, in my opinion, are contributing to anger, disinhibition, depression, and inactivity. In my view, opioids (including Oxycontin) are indicated for non-malignant chronic pain only as part of a comprehensive treatment program and when use of opioids increases level of function. Mrs. Wade's present treatment program is limited to prescription of medications. There is no indication that long-term use of Oxycontin has increased level of function."
13. Dr. Rollins report goes on to say that "opioids are contributing to problems and should be discontinued" and that "Mrs. Wade's current psychiatric problems were not caused by the work injury of April 14, 1990."
14. Ashley Harrelson, decedent's vocational case manager, noted in her July 22, 2003 summary that, "a total of seventy-two employment leads have been forwarded to the claimant since 11/22/02. The claimant has reported contacting employers in person, although no job search logs have been received to date. At this time, the signed Form 25C has also not been received." Ms. Harrelson testified that decedent reported contacting employers by telephone, faxing resumes, and contacting two employers for interviews, but job search logs documenting those efforts were never received from deceased/decedent, which makes it difficult to follow up on her efforts. Decedent has not provided the job logs as she agreed to do in her initial meeting with Ms. Harrelson when the two of them developed vocational rehabilitation plans.
15. Dr. Sheline, decedent's primary care physician, was asked if decedent's medications affect her ability to be employed or get employment and Dr. Sheline testified, "no, she's not on that high of levels of medicine that she could not be employed just because of the medicine." Dr. Sheline also testified that she would agree with Dr. Rollins with respect to the Valium, in that it "is probably the one drug particularly I don't think is helping and I would love to get her off of it, but she has not been a willing participant in that."
16. Grace Hale, decedent's medical case manager, when asked if she was currently working with Mrs. Wade answered, "I guess it's a yes and no question." She went on to state, "In that she was last seen by Dr. Giusto a few months back and he's left the practice. We did make arrangements for Dr. Eisinger I believe her name is. She's come to that practice and she has taken over some of his patients. I did make arrangements for Ms. Wade to follow up with her but she didn't show up for the appointment." Ms. Hale also testified that no workers' compensation-related physician has ordered any medications for decedent in almost a year-and-a-half.
17. The medical evidence shows decedent reached maximum medical improvement, was capable of sedentary work, and was at a high level of functioning physically. Decedent had transferable skills from her education and prior work experience. Decedent has been able to work in a research position at Duke in the recent past, but seemed reluctant to seek employment outside of Duke as evidenced by decedent's failure to cooperate with vocational efforts as she agreed to do and was directed to do by the Commission's Orders dated August 17, 2001 and May 1, 2002.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Decedent has not been cooperative with vocational efforts as she agreed and as directed by the Commission's Order dated August 17, 2001. Decedent's violation of the Industrial Commission Order directing her to cooperate with vocational rehabilitation services provided by defendant entitles defendant to suspend her weekly compensation payments. N.C. Gen. Stat. §§ 97-18.1, 97-25.
2. Decedent's back problems for which she is being treated by her personal health care physician, Dr. Barbara Sheline, are multi-factorial and not related to her April 1990 injury, therefore, decedent is not entitled to medical compensation for this or any medical care that is not shown to be related to her 1990 injury.
3. Decedent's next of kin is entitled to 4% impairment rating to decedent's back at the weekly rate of $390.00 for twelve weeks. N.C. Gen. Stat. § 97-31. Wilhite v. Libery Veneer Co., 47 N.C. App 434,267 S.E.2d 566, rev'd on other grounds, 303 N.C. 281, 278 S.E.2d 234
(1981).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Defendant's Form 24 Application to Terminate or Suspend Payment of Compensation pursuant to N.C. Gen. Stat. § 97-18.1 is APPROVED, and defendant is permitted, effective immediately to suspend decedent's temporary total disability benefits.
2. Decedent's request for change of physician and additional compensation for medical expenses is hereby DENIED.
3. Defendant shall pay decedent's next of kin for the 4% permanent partial impairment rating to decedent's back at the weekly rate of $390.00 for twelve weeks.
4. Defendant shall pay the costs.
This the 3rd day of February 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DCS/mb